IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY, and
THE SIERRA CLUB,

        Plaintiffs,

v.                                       Civil Action No. 3:21-cv-00301

GLENDA OWENS, ACTING
DIRECTOR, OFFICE OF SURFACE
MINING RECLAMATION AND
ENFORCEMENT,

        Defendant.

## COMPLAINT

### INTRODUCTION

1. This is a citizen suit for declaratory and injunctive relief against Defendant, Glenda Owens in her official capacity as Acting Director of the Office of Surface Mining Reclamation and Enforcement ("OSMRE"), pursuant to § 520(a)(1) and (a)(2) of the Surface Mining Control and Reclamation Act ("SMCRA") for failure to comply with the nondiscretionary duty set forth in 30 C.F.R. § 732.17(c).

2. As detailed below, Plaintiffs allege that OSMRE has failed to make the required determination of whether an amendment to West Virginia's SMCRA Program is necessary within the 30-day period following receipt of notice from the West Virginia Department of Environmental Protection ("WVDEP").

3. Plaintiffs seek a declaration that Defendant has violated her non-discretionary duty, an injunction requiring her to conform her future conduct to the federal law, and costs and expenses including attorneys' and expert witness fees.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 30 U.S.C. § 1270(a).

5. On March 12, 2021, Plaintiffs mailed a notice of the violation and their intent to file suit in letters addressed to the Defendant, the Acting Secretary of the United State Department of the Interior, the Regional Director for OSMRE, and WVDEP as required by § 520(b)(1)(A) of SMCRA. 30 U.S.C. § 1270(b)(1)(A).

6. More than sixty days have transpired since the notice letters were sent and Defendant has failed to make a determination pursuant to 30 C.F.R. § 732.17(c) and redress the violation described in the notice letter.

7. Venue is appropriate pursuant to 30 U.S.C. § 1270(c) because the surface coal mining operations complained of are in this judicial district.

## PARTIES

8. Defendant is a "person" within the meaning of § 701(19) of SMCRA. 30 U.S.C. § 1291(19).

9. Ms. Owens is the Acting Director of OSMRE. She is responsible for ensuring that OSMRE meets its obligations under SMCRA and its implementing regulations as the Director of the agency.

10. Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio. Its principal place of business is Huntington, West Virginia. It has approximately 550 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to

the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

11. Plaintiff West Virginia Highlands Conservancy is a nonprofit organization incorporated in West Virginia. It has approximately 1,000 members. It works for the conservation and wise management of West Virginia's natural resources, and is one of West Virginia's oldest environmental activist organizations. The West Virginia Highlands Conservancy is dedicated to protecting our clean air, clean water, forests, streams, mountains, and the health and welfare of the people that live in West Virginia and those who visit to recreate.

12. Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 780,000 members and supporters nationwide, including approximately 2,700 members who reside in West Virginia and belong to its West Virginia Chapter. Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of Earth; to practicing and promoting responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club's concerns encompass the exploration, enjoyment, and protection of surface waters in West Virginia.

13. Plaintiffs' members, including Cindy Rank, Ronda Harper, and others use and enjoy the areas affected by WVDEP's failure to fully reclaim all underground and surface mine sites in West Virginia that have been abandoned since the enactment of SMCRA on August 3, 1977—and OSMRE's failure to require the state agency to do so.  Specifically, Plaintiffs' members visit, live near, drive by and/or fly over areas of the State and observe the adverse impacts which have resulted from the failure of WVDEP to fully reclaim all mine sites which SMCRA permittees have

abandoned before completion of reclamation. The observable adverse impacts of the failure to properly reclaim these surface mines and the pollution of streams resulting from inadequate bonding adversely affect these members' property, recreational, aesthetic and environmental interests. For example, unreclaimed mines owned by ERP Environmental Fund discharge excessive amounts of selenium and other pollutant discharges that degrade water quality and harm aquatic life in downstream waters, including Rum Creek, the Mud River and its tributaries. Because of this pollution, Plaintiffs' members refrain from using or restrict their usage of waters receiving these discharges.

14. At all relevant times, Plaintiffs were and are "persons" as the term is defined by § 701(19) of SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

15. Section 732.17 of OSMRE's implementing regulations for SMCRA require a State regulatory authority to notify OSMRE "of any significant event or proposed changes which affect the implementation, administration or enforcement of the approved State [SMCRA] program." 30 C.F.R. § 732.17(b).

16. Within 30 days of OSMRE's receipt of that notification, the Director of OSMRE "shall determine whether a State program amendment is required and notify the State regulatory authority of the decision." *Id.* § 732.17(c).

17. To guide OSMRE in making its determination, the regulations further provide a list of three examples of when State program amendments may be required:

> (1) As a result of changes in [SMCRA] or regulations of this chapter, the approved State program no longer meets the requirements of [SMCRA] or this chapter; or (2) Conditions or events change the implementation, administration or enforcement of the State program; or (3) Conditions or events indicate that the approved State

> program no longer meets the requirements of [SMCRA] or this chapter.

*Id.* § 732.17(e)(1)-(3).

18. Thus, when the State program no longer meets the requirements of SMCRA, a program amendment is necessary. *Id.* § 732.17(e)(2).

19. SMCRA requires permittees to post bonds in an amount that is sufficient to assure completion of reclamation by the State regulatory authority in the event of forfeiture—that is, if the operator refuses or is unable to complete reclamation. 30 U.S.C. § 1259(a), (b). West Virginia's SMCRA program imposes the same requirement. W. Va. Code § 22-3-11. The State regulatory authority must ensure that adequate bond coverage is in effect "at all times." 30 C.F.R. § 800.4(g).

20. To ensure adequate bond coverage, states may adopt an alternative bonding system ("ABS") that "will achieve the objectives and purposes of the bonding program pursuant to [SMCRA]." 30 U.S.C. § 1259(c).

21. To achieve this, the state ABS "must assure that the regulatory authority will have available sufficient money to complete the reclamation plan for *any areas* which may be in default *at any time*." 30 C.F.R. § 800.11(e)(1) (emphasis added). The words "at any time" include both present and potential future insolvencies.

22. West Virginia has adopted an ABS, which is funded by a tax levied on each ton of coal mined to support the Special Reclamation Fund ("SRF") that is to be used to complete reclamation at forfeited sites. Whenever the amount of forfeited and posted bonds for a mine is less than the actual cost of reclamation, WVDEP must withdraw funds from the SRF to pay for reclamation. W. Va. Code §§ 22-3-11(g), (i).

23. In approving West Virginia's program, OSMRE stated that 30 C.F.R. § 800.11(e) "requires that West Virginia modify its ABS to (A) eliminate the deficit and (B) ensure that sufficient money

will be available to compete land and water reclamation on all existing *and future* bond forfeiture sites." 67 Fed. Reg. 37610, 37613 (May 29, 2002) (emphasis added). OSMRE also approved West Virginia's establishment of the Special Reclamation Advisory Council to meet the requirements of 30 C.F.R. § 800.11(e); it explained that "the Advisory Council will have to determine current *and anticipated* bond forfeiture reclamation obligations, including water treatment." *Id.* (emphasis added). OSMRE further stated, "the Advisory Council has an obligation under State law to monitor the [SRF], address funding-related issues, and recommend measures to ensure the long-term solvency of the [SRF]." *Id.* at 37614.

## FACTS

24. On December 30, 2020, WVDEP sent OSMRE a letter notifying the agency and the Director at the time, Lanny Erdos, of significant events that affect the West Virginia SMCRA program and may necessitate a program amendment.

25. That notice was the result of litigation between Plaintiffs and WVDEP. In their lawsuit against WVDEP, Plaintiffs asserted that WVDEP had violated its own non-discretionary duty by failing to provide notice to OSMRE of a significant change in the State's program.

26. Plaintiffs' allegations were primarily based upon the statements of WVDEP's own Director of Mining and Reclamation, Harold Ward, in an affidavit filed in West Virginia state court, which made clear that the 2020 insolvency of coal mine operator ERP Environmental Fund threatened the viability of the SRF.

27. In denying WVDEP's motion to dismiss that lawsuit, this Court found, as a matter of law, that the Plaintiffs' "allegations present a plausible claim because the alternative bonding system is an important source of funding for the state's SMCRA program and may be significantly impacted when a major permit holder becomes insolvent." Memorandum Opinion, *Ohio Valley*

*Environmental Coalition v. Caperton*, No. 3:20-cv-470, at *10, 2020 WL 6703129 (S.D. W.Va. November 13, 2020).

28. Statements from Harold Ward from his affidavit in West Virginia state court were quoted both in the Plaintiffs' complaint and this Court's order, both of which were provided to OSMRE as attachments to WVDEP's § 732.17(b) notice letter. Specifically, the Court's opinion quoted the following statements made by Mr. Ward in his affidavit:

   a. ERP holds more than 100 permits issued by WVDEP. Ward Affidavit at ¶ 9.

   b. Since 2015, WVDEP has issued 160 notices of violation against ERP, 118 failure to abate cessation orders, and 41 orders to show cause why relevant ERP permits should not be revoked. *Id.* at ¶¶ 5–7.

   c. ERP has acknowledged to WVDEP that it is in material default of its permit and reclamation obligations, but has no sources of cash or other assets available for reclamation and water treatment. *Id.* at ¶ 9.

   d. As of March 19, 2020, ERP laid off all of its employees and ceased operations. *Id.* at ¶ 10.

   e. WVDEP expects ERP sites to begin to threaten imminent and identifiable harm to the environment and the public health and safety if left unreclaimed. *Id.* at ¶ 13.

Memorandum Opinion, *Caperton*, at *4–5.

29. Mr. Ward's affidavit further clarified WVDEP's inability to address ERP's reclamation obligations through the OSMRE-approved ABS:

   a. At the time ERP acquired its permits, WVDEP estimated reclamation costs to be "in excess of $230 million" with potentially "hundreds of millions" more in water treatment liabilities. Ward Affidavit at ¶¶ 25–26.

    b. WVDEP is unsure that the surety bond provider can pay out the full $115 million in bonds that should be available for reclaiming ERP's permits. *Id.* at ¶ 63.

    c. Reclaiming permits through the SRF "would overwhelm the fund both financially and administratively," and therefore reclamation may not be completed as required by SMCRA. *Id.* at ¶ 64.

Memorandum Opinion, *Caperton*, at *4–5.

30. Additionally, Mr. Ward's statements that were incorporated into WVDEP's § 732.17(b) notice were sufficient to convince the West Virginia Business Court to grant a preliminary injunction appointing a Special Receiver and placing ERP's assets in a receivership to avoid the SRF being "overwhelmed." Preliminary Injunction and Order Preliminarily Appointing a Special Receiver for Defendant's Property, Assets, and Operations, *Harold D. Ward v. ERP Environmental Fund, Inc.*, No. 20-C-282 (Dec. 22, 2020).

31. The Special Receivership has not solved the problems created by ERP"s insolvency. Indeed, the Special Receiver himself has stated in a status report to this Court in a related proceeding that "he does not believe that there will be sufficient sources of revenue to cover <u>all</u> of the ERP reclamation and compliance obligations on <u>all</u> of the remaining EPR permits in all jurisdictions."

32. Moreover, the creation of the Special Receivership is an extraordinary procedure meant to reduce costs to the West Virginia Special Reclamation Program and ERP's sureties rather than encourage fast and efficient reclamation and SMCRA compliance at ERP's mines. It is not consistent with the State's obligations under the Act.

33.     While ERP's sureties are providing money to the Special Receivership through an initial contribution of $1,000,000 and ongoing preferred stock purchases, the amount pales in comparison to the $115,000,000 that would be available if ERP's bonds were forfeited.

34.     As explained in the Complaint in the *Caperton* case, and in Plaintiffs' Notice of Intent to Sue OSMRE, ERP is not the only major mining company in West Virginia that is currently insolvent or that faces a threat of immediate insolvency.

35.     The recent bankruptcy of Blackjewel LLC and its affiliate Revelation Energy (as well as other subsidiaries), resulted in bond forfeiture at mines in Kanawha County, West Virginia.  The WVDEP had been in ongoing litigation with that company for years over ongoing water quality problems at the site and Revelation's failure to meet its reclamation obligations.

36.     Separately, Lexington Coal Company, which holds more than 150 permits in West Virginia and is operated by Blackjewel's former CEO, Jeff Hoops, is embroiled in litigation brought by Blackjewel.  Blackjewel alleges that Hoops inappropriately stripped assets from Blackjewel in favor of Lexington.

37.     Other companies such as Southeastern Land, LLC are not currently in bankruptcy but are subject to ongoing litigation by the WVDEP for permit violations across dozens of mining permits.

38.     In West Virginia, the Special Reclamation Fund Advisory Council has the obligation to monitor the state ABS fund, address funding-related issues, and recommend measures to ensure the long-term solvency of the Fund.

39.     The 2020 Annual Report from the Special Reclamation Fund Advisory Council shows the entity has failed to meet its obligations.  The report does not even mention the current insolvency of ERP or the Special Receivership that was approved to prevent the imminent failure of the Special Reclamation Program.  Likewise, the Advisory Council Annual Report fails to mention or

analyze any of the other current or threatened insolvencies that could result in reclamation responsibilities of even greater magnitude than the failure of ERP. Instead, the Special Reclamation Fund Advisory Council continues to rely on outdated projections of forfeiture rates based on those of decades past, which do not represent the current state of the coal industry in West Virginia.

40. On January 29, 2021, OSMRE responded to WVDEP's § 732.17(b) notice but, significantly, did not make the determination of whether a program amendment is required despite the ample evidence that such an amendment is necessary.

41. Instead, OSMRE merely indicated its intent to cooperatively work with WVDEP and make such a determination in the future. No proposed schedule or date by which this determination will be made was mentioned in the letter.

42. To date, OSMRE and WVDEP have made little or no progress towards analysis of the situation.

43. Additionally, OSMRE has still not made the requisite determination under 30 C.F.R. § 732.17(c).

**CLAIM FOR RELIEF**

**(Violation of 30 C.F.R. § 732.17(c))**

44. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 43 above.

45. Pursuant to 30 C.F.R. § 732.17(c), OSMRE had 30 days from receipt of WVDEP's notification to determine whether a State program amendment is required and notify the State regulatory authority of the decision.

46. Since WVDEP sent its notification, approximately 140 days have passed without OSMRE making the requisite determination of whether a State program amendment is required.

47. Although OSMRE did respond to WVDEP's notification, the response did not satisfy OSMRE's non-discretionary duty to make a determination of whether a State program amendment is required.

48. For these reasons, OSMRE has violated and is in continuing violation of the requirements set forth in SMCRA.

49. Because the current West Virginia Special Reclamation Fund is not able to ensure that sufficient money will be available to complete land and water reclamation on all existing and future bond forfeiture sites, in accordance with the requirements of 30 C.F.R. § 800.11(e), and the Special Reclamation Fund Advisory Council refuses to meet in its responsibility to oversee such fund, the Defendant must determine that a state program amendment is necessary.

## REQUESTS FOR RELIEF

50. A Declaration that OSMRE has violated and is in continuing violation of SMCRA.

51. An Injunction compelling OSMRE to immediately comply with SMCRA and make the determination that amendment to the West Virginia SMCRA program is necessary.

52. An Order requiring OSM to comply fully and without delay with every provision of SMCRA related to its oversight of the West Virginia state bonding program;

53. An Order awarding Plaintiffs their attorneys' fees, expert witness fees, and all other reasonable costs and expenses incurred in pursuit of this action; and

54. A Grant of any other such relief as this Court deems just and proper.


DATED: May 17, 2021

Respectfully submitted,

/s/ J. Michael Becher
J. Michael Becher (WV Bar No. 10588)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 382-4798
mbecher@appalmad.org

*Counsel for Plaintiffs*