# EXHIBIT 1

(OSMRE Letter dated Aug. 23, 2021)

# United States Department of the Interior



OFFICE OF SURFACE MINING
RECLAMATION AND ENFORCEMENT
Washington, D.C. 20240



August 23, 2021

Harold Ward, Secretary
West Virginia Department of Environmental Protection
601 57th Street
Charleston, West Virginia  25304

Dear Secretary Ward:

This letter is in further response to your correspondence dated December 30, 2020, in which you notified us of the possible occurrence of a significant event that may affect the implementation, administration, or enforcement of the West Virginia approved State program. Based on a copy of the complaint and memorandum opinion of the U.S. District Court for the Southern District of West Virginia in *Ohio Valley Environmental Coalition v. Caperton*, Case No. 3:20-cv-00470 (S.D. W. Va.), which you provided with your letter, the possible significant event relates to the insolvency of ERP Environmental Fund, Inc., which holds over 100 permits issued by the West Virginia Department of Environmental Protection (WVDEP) to mine coal and conduct other related operations in West Virginia.

By letter dated January 29, 2021, we acknowledged the complexity of these circumstances and the potential impacts on the West Virginia approved State program, particularly to the solvency of WVDEP's financial assurance program that ensures funds are available to carry out reclamation responsibilities if a permittee is no longer able to do so. In our January 2021 letter, we also indicated that additional information and evaluation was needed to inform analysis of our determination(s) pursuant to 30 C.F.R. § 732.17(c) about whether a State Program amendment is required. Since sending that letter, we have been working with your Department to gather information necessary to perform that analysis.

Federal regulations provide that amendments to a State program may be necessary when "[c]onditions or events indicate that the approved State program no longer meets the requirements of the [Surface Coal Mining and Reclamation Act of 1977 (SMCRA)] or this chapter." 30 C.F.R. § 732.17(e)(3). SMCRA requires that, before the issuance of a SMCRA permit, an applicant must obtain a bond that is "sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture." 30 U.S.C. § 1259(a). States may adopt alternative bonding systems, such as the one in place in West Virginia. However, the alternative bonding system must: (1) "assure that the regulatory authority will have available sufficient money to complete the reclamation plan for any areas which may be in default at any time" and (2) "provide a substantial

economic incentive for the permittee to comply with all reclamation provisions." 30 C.F.R. § 800.11(e).

The West Virginia program has historically relied on two principal sources of funding to ensure that sufficient money is available for reclamation—financial assurances backed by third-party providers (e.g., surety bonds) and two State funds, including the State's Special Reclamation Fund (SRF) and Special Reclamation Water Trust Fund (SRWTF), which are funded mostly through a reclamation tax on coal produced in the State.

In 1995, we required WVDEP to propose amendments to its financial assurance program that would "ensure that sufficient money will be available to complete reclamation, including the treatment of polluted water, at all existing and future bond forfeiture sites." 60 Fed. Reg. 51,900 (Oct. 4, 1995) (codifying the requirement at former 30 C.F.R. § 948.16(lll)). In 2002, we approved WVDEP's proposal to address this requirement, noting the recent creation of the Special Reclamation Fund Advisory Council (Council). 67 Fed. Reg. 37,610 (May 29, 2002). Our approval relied in large part on the powers and responsibilities of the Council to evaluate the SRF (and as of 2008 to include the SRWTF) and make appropriate recommendations to the West Virginia Legislature that would ensure the effective, efficient, and financially stable operation of the SRF. *See id.* In that approval, we discussed several underlying issues regarding the inadequacy of the information and data available to the Council for its evaluation and the Council's ability to effect changes to the SRF's operation solely through recommendations to the Legislature. *Id.* at 37,613-14.

Through our joint review with WVDEP of the West Virginia financial assurance program concerning the issues raised in your December 30, 2020, notification, we have determined that the West Virginia program contains the same or similar deficiencies that we described in our 2002 approval. Specifically, the West Virginia program has not taken sufficient steps to ensure the compilation of complete and accurate estimations of all outstanding reclamation obligations on active permits, which can result in leaving unfunded environmental liabilities that are not discovered until after forfeiture. Our 2002 approval relied on the justification that WVDEP's methods for collecting and maintaining this information would improve, providing the Council, auditors, and ultimately the West Virginia Legislature, with accurate and up-to-date information regarding the extent of reclamation obligations that could fall to the State. This issue has been raised between WVDEP and the Council but has not been corrected. The information from existing forfeited permits must also be up-to-date and accurate in order to adequately inform the Council's projections and recommendations. The accuracy of that information is also vital to our joint review of the West Virginia program, as well as our ultimate ability to determine whether the West Virginia program complies with 30 C.F.R. § 800.11(e)(1), which states that OSMRE may approve a State's alternative bonding system only if it will assure "that the regulatory authority will have available sufficient money to complete the reclamation plan for any areas which may be in default at any time."

In light of the foregoing, under 30 C.F.R. § 732.17(c), we have determined that West Virginia is required to submit a program amendment that will ensure tracking of existing reclamation liabilities (including water treatment) at mining operations. This improvement to

reclamation liability tracking must reflect revisions or changes to the activities occurring at relevant sites and occur with such a frequency that the actuarial studies are informed by current data.

Pursuant to the Federal regulations, within 60 days after this notification, West Virginia must submit to us "either a proposed written amendment or a description of an amendment to be proposed that meets the requirements of the Act and this chapter, and a timetable for enactment which is consistent with established administrative or legislative procedures in the State." 30 C.F.R. § 732.17(f)(1). We reserve our ability and obligation to exercise other oversight activities, under 30 C.F.R. Parts 732 and 733, which may result in additional action by us.

Moreover, pursuant to our authority under 30 U.S.C. § 1211(c) to "make those investigations . . . necessary to insure compliance" with SMCRA, we request that West Virginia provide us with information necessary to demonstrate that its penal bond limits fulfill the requirements of 30 C.F.R. § 800.11(e). Specifically, we note that, on June 7, 2021, the West Virginia Office of the Legislative Auditor's Post Audit Division released a report entitled, "WV Department of Environmental Protection Division of Mining & Reclamation – Special Reclamation Funds Report" (Legislative Audit Report). Both the Legislative Audit Report and the initial phase of our joint review with you have highlighted concerns about the adequacy of the current penal bond limits under W.Va. Code § 22-3-11(a). Thus, as we continue our joint review of the solvency of WVDEP's financial assurance program, it is important that we have information about existing reclamation liabilities, the interrelation between the penal bonds and the solvency of West Virginia's financial assurance program, and the role penal bonds have in ensuring reclamation by operators. Please propose a plan of action and timetable to obtain the necessary information and make the demonstration.

If you have any questions concerning this matter, please contact Regional Director Thomas Shope at TShope@osmre.gov or Acting Charleston Field Office Director Ben Owens at BOwens@osmre.gov. We look forward to working together with you to assist the West Virginia program in fulfilling the requirements of SMCRA.

Sincerely,

Glenda H. Owens
Deputy Director


cc: Thomas D. Shope, Regional Director, Regions 1&2
Ben Owens, Deputy Regional Director, Regions 1&2

3